CROSBY, administrator, &c. *v.* BERGER, LOCKWOOD and
another, executors of Duvet, deceased.

A solicitor who is made a defendant and who desires to protect himself from
answering on the ground of confidential communication, must distinctly
show that his knowledge and information came solely from his client.
He is not exempt, merely because he obtained it while engaged in business
for his client. And should he afterwards become the executor of his
client and he is made a defendant to reach the property which had been
held by such client, the privilege would cease and he must answer in con-
nection with it.

*June 15th,*
1843.

*Pleading.*
*Exception.*
*Answer.*
*Solicitor*
*and client.*
*Confiden-*
*tial com-*
*munica-*
*tion.*

THE bill was filed against the defendant Mr. Ralph Lock-
wood and others, executors of Divine Duvet, in order to
reach the property in the hands of himself and his co-execu-
tors, which was alleged to have come to the hands of the
testatrix as executrix of John Balbi. The bill called for an
account of such property. To this part of the bill the de-
fendant Ralph Lockwood declined to answer; and as an
excuse for so doing he stated in his answer that Duvet never
filed any inventory and that he acted as her attorney, solic-
itor and counsel and, as such, derived all his knowledge and
information of the account and value and species of pro-
perty left to her by Balbi; and, as such confidential attorney,
solicitor and counsel, he submitted to the court that he could
not, without a violation of such professional confidence, dis-
cover the same or make answer to that part of the discov-
ery prayed for by the complainant.

Exceptions were taken to the answer. The fourth excep-
tion was taken on a ground of neglect to answer such parts
of the bill as the said defendant, Ralph Lockwood, had at-
tempted to cover by his professional character; while a fifth
exception was taken, because, while he had answered as to
certain matter, yet he had not answered fully. The master
had allowed the exceptions; and the defendant had excepted
to his report.

Mr. *J. L Mason* and Mr. *B. F. Butler*, in support of the exceptions.

Mr. *Lockwood* in *pro. per.*

1843.

CROSBY
*v.*
BERGER.

*Oct.* 16,

THE VICE–CHANCELLOR:—The defendant claims exemption from the necessity of answering as to the matter of the fourth exception, by stating in his answer that he acted as attorney, solicitor and counsel of Duvet in proving the will of Balbi and procuring letters testamentary to her and in her not filing any inventory, " and as such attorney, solicitor and counsel derived all his knowledge and information of the amount and value and species of property left by Balbi to her." He does not say that he derived his knowledge and information by means of communications made by Duvet to him; and in this particular I think the answer falls short of the point. It is communications from the client to the attorney or solicitor that are deemed confidential and privileged and not knowledge or information which the attorney or solicitor may have acquired from other sources. I understand that to be the rule: *Sawyer v. Birchmore*, 3 Mylne & K. 572; *Desborough* v. *Rawlins*, 3 Mylne & Cr. 515. The latter case appears to me to be strongly in point; and it shows, moreover, that a party claiming to be exempt from making a discovery must bring himself clearly and distinctly within the privilege. Mr. Lockwood may have obtained all his knowledge of the matters inquired about while acting as the legal adviser of Duvet, but all the cases show that this is not enough. He should go further and say, distinctly, that the knowledge was communicated to him by his client either orally or by means of her papers and documents put into his hands in the capacity of her legal adviser. This, he does not show to have been the fact. He must, therefore, make the disclosure required of him by the fourth exception. But, if the case was within that of privileged communications originally, I am of opinion that the privilege ceased when Mr. Lockwood became an executor and residuary devisee, and, in that capacity, is called on to account and surrender the property. With respect to the fifth exception, the rule settled

1843.

CROSBY
v.
BERGER.

by the chancellor in the *Bank of Utica* v. *Messereau*, 7 Paige's C. R. 517, seems decisive of it. Indeed, it was pretty much admitted on the argument that, after that decision, the defendant could not avoid putting in a further answer, upon this exception.

Order that the exceptions to the master's report be overruled, with costs.(*a*)

(*a*) This decision was affirmed on appeal, the Chancellor (Walworth) giving the following opinion:

*The Chancellor*:—"It is not necessary to examine the question as to the fifth exception, as that question was decided adversely to the appellant in the case of *The Bank of Utica* v. *Messereau*, 7 Paige's Rep. 517.

"The appellant is under a mistake in supposing that an attorney or counsellor is privileged from answering as to every thing which comes to his knowledge while he is acting as attorney or counsel. The privilege only extends to information derived from his client as such either by oral communications or from books or papers shown to him by his client, or placed in his hands in his character of attorney or counsel. Information derived from other persons or other sources, although such information is derived or obtained while acting as attorney or counsel, is not privileged: *Spenceley* v. *Schulenburgh*, 7 East's Rep. 357. The object of the rule protecting privileged communications from being disclosed by the attorney or counsel is to secure to parties, who have confided the facts of their case to their professional advisers as such, the benefit of secresy in relation to such communications, so that the client may disclose the whole of his case to his professional adviser without any danger that the facts thus communicated to his attorney or counsel will be used in evidence against him without his own consent. But the principle of the rule does not apply to the discovery of facts within the knowledge of the attorney or counsel which were not communicated or confided to him by his client, although he became acquainted with such facts while engaged in his professional duty as the attorney or counsel of his client. See *Coveney* v. *Tannahill*, 1 Hill's Rep. 33, and cases there cited. Thus in the case of *Sawyer* v. *Birchmore*. 3 Myl. & Keene. 572, Lord Cottenham, while master of the rolls, decided that an attorney was bound to produce letters communicated to him from collateral quarters and to answer as to matters of fact as distinguished from matters communicated to him by his client in professional confidence.

"And the same principle was afterwards confirmed by him, as Lord Chancellor in the more recent case of *Desborough* v. *Rawlins*, 3 Myl. & Craig, 515. The decision of Lord Brougham in the case of *Greenough* v. *Gaskell*, 1 Myl. & Keene 98, does indeed appear to extend the privilege further than the previous cases would warrant and beyond the principle upon which the privilege is founded. But I think the true rule on the subject is to be found in the decisions of Lord Cottenham before referred to; in the able opinion of Mr. Justice Bronson in the case of *Coveney* v. *Tannahill*, in our own supreme court; and in the recent opinion of Lord Langdale in *Robinson* v. *Flight*, in July last, (8 London Jurist Rep. 888.)

1843.

CROSBY
*v.*
BERGER.

"In the present case, it may be true, as stated in the answer of Lockwood, that he derived all of his knowledge and information of the amount and value and species of property left to Duvet by the will of Balbi as her confidential attorney, solicitor and counsel and yet he may not have obtained any part of that knowledge or information from her either directly or indirectly.

"In the course of his professional duty, he may have examined the public records and found deeds there conveying real estate to Balbi; and may have examined and ascertained, either by his own view or from the information of others, the situation and value of such real property. In the same way he may have ascertained that large amounts of stock were standing in the name of Balbi at the time of his death upon the books of various corporations and the value of such stocks. And it is wholly improbable that the defendant, who admits he was the general attorney and solicitor of Duvet, has no knowledge or information as to the property of Balbi except such as she has obtained from Duvet herself in his character as attorney and counsel. The fourth exception to the answer was, therefore, well taken; and it is not necessary to inquire whether Duvet's privilege was not at an end when Lockwood became her executor and legatee by her own appointment.

"The order appealed from must be affirmed, with costs; and the proceedings are remitted to the Vice-Chancellor of the first circuit."